STATE *v.* JOHN M. PHILLIPS.

(*July* 15, 1936.)

LAYTON, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*P. Warren Green,* Attorney-General, and *William J. Storey,* Deputy Attorney-General, for the State.

*Charles L. Terry, Jr.,* for the defendant.

Court of Oyer and Terminer for Kent County. Indictment for Manslaughter, No. 2, July Term, 1936.

LAYTON, C. J., charging the jury:

John M. Phillips, the accused, is charged in the indictment before you with the crime of manslaughter arising out of the death of one Grover Brown Billings on June 16, 1936, at a place called Ruth's place near Harrington in this county.

The State contends that in the early morning of June 16, last, the accused, Billings and others were engaged in playing stud poker at Ruth's place, and that an argument arose between the two which resulted in Billings, who had charge of game, telling the accused to go away and stay away; that the accused went into the kitchen of the place and later went outside to go home; that outside of this place a fight started between the accused and Billings and that Billings struck Phillips and they clinched; that the accused had his left arm around Billing's neck with his right arm free while Billings had Phillips around the body or legs as if in wrestling; that Phillips made two thrusts at Billings

with his free arm, striking him apparently in the chest, and then threw something to a companion named White, saying, "Roy catch this," and he, White, threw the object, which was a knife, from him in a northerly direction; that they then separated, and Billings took two or three steps, and fell in the doorway of this place; that then it was discovered that he had been wounded in the chest; that he died soon after the arrival of the doctor; that the cause of death was found to be a puncture of the heart, the wound being caused by some sharp instrument penetrating upwards into the apex of the heart; that another wound was found on the left hip and that subsequently the knife was found in the direction in which White threw the knife.

The State contends, therefore, that the accused is guilty of manslaughter for the reason that he stabbed and killed Billings in heat of blood, while being engaged in a fight with him.

The defendant does not deny the facts and circumstances as related by the witnesses on the part of the State up to the time Phillips left the kitchen, but he contends that while engaged in the game Billings had a knife in front of him on the table; that just as he was leaving the kitchen he, Phillips, took out his penknife and opened it with his hand behind him only to bluff Billings, not to attack him; that Billings was outside and at once struck at him; that he with the point of the knife toward himself made two thrusts at Billings, but did not hit him; that Billings then rushed at him and struck him on the head and they clinched; and that then he threw the knife away to avoid injuring Billings. He contends that he did not consciously and intentionally stab Billings with the knife, but that if Billings was stabbed it was by accident and misadventure caused by Billings' rushing in upon him and not by his own voluntary, intentional act.

The defendant also contends that the knife that was found and which is in evidence was not his knife.

The defense offered is that Billings came to his death by misadventure and that he, Phillips, is guilty of no offense whatever.

These, gentlemen, are the respective contentions of the State and of the accused stated very shortly. They are stated as contentions only and not as to indicate any opinion on the part of the Court nor to govern your own recollection of the testimony of the witnesses. You are the sole judges of the testimony, and it is your recollection of the evidence which must control you in your deliberations and decisions.

The respective contentions of the State and of the defense give rise to several issues which will be explained to you.

■ Manslaughter, the offense which is charged in the indictment, is the unlawful killing of one human being by another without malice, express or implied. To explain the offense to you, it will be necessary, very shortly, to explain also what constitutes murder in the first and second degrees.

■■ The fundamental differences between murder and manslaughter is that to constitute murder there must be malice, while in manslaughter there is no malice.

Malice is not easy to define, but you may regard it as a wickedness of mind or spirit. In murder of the first degree the malice must be express. This is usually shown by something the accused did or said before doing the fatal act which shows that he did it with a formed purpose or design to take life. If it be shown that one kills another as a result of a deliberate intention to take life, the wickedness

of spirit, or, in other words, the malice is called actual or express malice.

■ If there is no deliberate intention or formed design to kill, yet where the fatal act is done voluntarily and cruelly, and under circumstances which offer no excuse or mitigation, the wickedness of spirit or the malice is said to be implied, and the killing is murder of the second degree.

We are not concerned with murder of either degree. The State does not contend that the accused killed Billings with malice either express or implied. It does contend that he killed Billings by stabbing him while he was engaged in a fight with him and after the deceased had struck him, and that he stabbed him while in a transport of passion aroused by the blow which Billings had given him.

The common example of voluntary manslaughter is where upon a sudden quarrel two persons fight and one of them kills the other, or where one person greatly provokes the other as by some personal violence, and the other immediately kills him. In such case, the law does not entirely excuse the killer, but because of the frailty of humanity, it regards the one who kills in an outburst of passion aroused by adequate provocation guilty of a lesser offense than murder, because the killing is not done with malice. The most peaceably disposed person may be so provoked by a blow or other personal violence as to lose control of himself, and while in such condition may kill another. The killing in such circumstances is unlawful, but it is not a malicious killing.

So, gentlemen, voluntary manslaughter is where one person kills another without malice in his heart or mind, as where one in a sudden fight and in the heat of blood or in a gust of passion, without time for reflection or for the passions to cool, kills another; and it is the contention of

the State that the evidence shows that the accused did stab and kill the deceased while in such a frenzy of mind or transport of passion, aroused by Billings' striking him, as to render him for the moment utterly deaf to the voice of reason. The State contends that while the killing was intentional it was not done with malice, for it admits that the provocation was serious enough to deprive the killing of any malicious character.

If you shall find beyond a reasonable doubt, therefore, that the accused did kill Billings while in such a gust of passion aroused by being struck by Billings, your verdict should be guilty as charged—that is, guilty of manslaughter.

The defendant, on the other hand, does not admit that he stabbed Billings at all. He contends that if the knife which he had in his hand penetrated into the body of Billings and thereby caused his death, it was not through his voluntary or conscious act, and that the death of Billings was by accident or misadventure.

Killing by misadventure is a kind of homicide which the law terms excusable homicide. This form of homicide occurs where one engaged in doing a lawful act, without intention to do harm and with proper precaution to avoid danger, unfortunately kills another.

So there are three things necessary to constitute the defense of homicide by misadventure: First, there must have been no intention to harm; second, proper precautions must have been taken to avoid doing harm; and, third, the act from which death resulted must have been a lawful act.

The accused contends that he committed no unlawful act and that he held the knife in his hand "only to bluff Billings," as he expressed it, and that if his knife did enter into Billings' body it was not by his design or intention, but

was caused by Billings' rushing in upon him and clinching with him and not through any act or carelessness of his own.

To justify a verdict of not guilty on the ground of accident or misadventure, it must appear to the jury from the testimony that the death was the unfortunate result of an act perfectly lawful in itself, and that such act was done with reasonable care for the lives and persons of others. Whether the defense of death by accident is made out depends in part upon the lawfulness of the act of the accused who sets up such defense.

Homicide by misadventure is an unintentional act as distinguished from homicide in self-defense, which is an affirmative, positive, and intentional act.

In the case before you the defense of self-defense is not relied upon, and ordinarily, the law of self-defense is not applicable in the case of a killing resulting from an act which was accidental and unintentional; but the principles of self-defense may be involved, not for the purpose of establishing self-defense, but only to determine whether the accused was or was not at the time engaged in a lawful act. In such case the right but not the law of self-defense is invoked.

Now, what we are about to say is not to be considered as a charge upon the law of self-defense, but only to guide you in your determination from the evidence whether the accused at the time was acting lawfully or unlawfully.

Where one is attacked by another it is his duty to retreat or to evade the fight if he can conveniently and with reasonable safety do so. This is especially true where the attack upon him is not made with a deadly weapon. Nor ordinarily may one use a deadly weapon to repel a non-felonious attack, but if the circumstances are such that one

cannot conveniently and with reasonable safety evade an attack made upon him, it is not unlawful to repel an unlawful attack, although the attack be not a deadly one; and if in doing so the assailant is killed unintentionally and without the use of excessive force or means, it is a killing while doing a lawful act, and it is excusable.

If you shall be satisfied, therefore, that the accused when he went outside from the kitchen had no intention to enter into a fight with Billings and that he had the knife only to deter a possible attack upon himself, that Billings· without provocation did attack him, that the circumstances were such that he could not conveniently escape or avoid the attack, that he did not intentionally or consciously stab or wound Billings—as, for example, if the wound was caused by some instinctive action on his part, that the accused did not use the knife in a careless or reckless manner, but with such care as a reasonably prudent person would use under such circumstances, and that the wound was caused by Billings' rushing in upon the accused and clinching with him, then the death was accidental or, as it is called, a death by misadventure, and your verdict should be not guilty.

But, gentlemen, even if the cutting or stabbing was not intentional, yet, if it was done where the defendant was acting unlawfully or carelessly or negligently, the death cannot be said to be accidental, and this requires us to define to you an offense known as involuntary manslaughter.

Involuntary manslaughter is where a person in committing an unlawful act, not felonious or tending to great bodily harm, or in committing a lawful act without proper precaution, unintentionally or undesignedly kills another.

So if you shall be satisfied beyond a reasonable

doubt that the accused did stab the deceased while acting in an unlawful manner, as, for example, if he made no effort to evade the fight, although he could have done so with reasonable convenience and safety to himself, or if he entered into the combat willingly and while so engaged, although not intending to kill the deceased, did stab him; or if you shall be satisfied beyond a reasonable doubt that the accused while acting in a lawful manner—that is, if the combat was not entered into willingly by him, or if he was not able to evade it with reasonable convenience or safety to himself, although he did not intend to kill, yet used his knife without that care and caution which a reasonably prudent person would exercise in a like situation, or although not intending to kill used the knife with excessive force and thereby stabbed and killed the deceased, in such cases the killing may not be said to be accidental, and your verdict should be guilty of manslaughter.

There is another possible verdict under an indictment such as this. By a statute of this state it is provided that upon the trial of any person for a felony not capital, where the crime charged shall include an assault against a person, the jury may acquit of the felony and find a verdict of assault only if the evidence shall warrant such finding.

(The Court here charged on good reputation, conflict of evidence, presumption of innocence and reasonable doubt.)