Richard Lee **WARD, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted June 24, 1976.

Decided Oct. 8, 1976.

John B. Kennedy, Wilmington, for defendant below, appellant.

Peter N. Letang, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, and DUFFY and McNEILLY, Justices.

DUFFY, Justice:

Defendant, Richard Lee Ward, was indicted for attempted murder in the first degree, 11 Del.C. § 531, § 636, and convicted by a Superior Court jury of assault in the first degree, 11 Del.C. § 613. He appeals alleging, *inter alia,* that it was error for the Trial Court to comment on the credibility of a prosecution witness and that he was denied a fair trial as a consequence of the Court's failure to instruct the jury on the law of accident. We conclude that these constitute reversible error so that a new trial is required.

## I.

The State's evidence shows that Ward and a cohort, Anthony Jenkins, burglarized a farmhouse near Newark. Among the items taken was a hand gun. Shortly after the burglary, Ward shot Jenkins with the stolen gun and the indictment is based on that act. A significant issue in the case involves whether the shooting was intentional or accidental.

## II.

■ We first consider defendant's argument that it was error for the Trial Judge to comment on the credibility of the victim, Jenkins, who testified for the prosecution.

Jenkins was, of course, an important witness for the State. During cross examination defense counsel attempted to show that he was biased and had a personal mo-

tive for testifying against Ward. Jenkins admitted that he had been charged with the burglary in which the gun had been stolen and that the State had agreed to accept his plea to a "much-reduced charge" of trespass; he had, in fact, entered such a guilty plea the day before he testified against Ward and the State had recommended that he be placed on probation. He also admitted that pending narcotics charges against him had been dropped by the State.

In this posture of the case, the implication that Jenkins had received favorable treatment from the State in consideration for his testimony against Ward was a matter for evaluation by the jury. And it could have been a significant factor in determining the credibility of that testimony.

But following the revelations of Jenkins' negotiations with the State, the record shows as follows:

"MR. WRIGHT [the Prosecutor]: Your Honor, may I approach side bar?

THE COURT: Come forward.

(There was a side-bar conference.)

THE COURT: I instruct the jury that with respect to any matters that may have been pending involving this witness, criminal charges that may have been pending, that this witness is presumed innocent under the law of any charges, so that no inference is to be drawn from the pendency of other charges."

In our view, that instruction to the jury was erroneous and a comment on the evidence in violation of Article IV, § 19 of the State Constitution.[1]

Of course Jenkins would be entitled to the presumption of innocence if he himself were on trial for narcotic violations or other offenses. But he was not on trial in this case. Ward was. Jenkins' credibility

---

1. Article IV § 19 states:
 "Judges shall not charge juries with respect to matters of fact, but may state the

 questions of fact in issue and declare the law."

was in issue and, as to that, there is no presumption in his favor. The Ward jury was not concerned with whether Jenkins was or was not guilty of narcotics or other charges. However, it *was* very concerned with whether the State's decision not to prosecute was any part of a bargain for his testimony against Ward. Exploration of that issue was an appropriate subject for cross examination and it was erroneously terminated and qualified by the Trial Judge's instruction to the jury. See *State v. Hector,* 190 Ohio St.2d 167, 249 N.E.2d 912, 919 (1969); *State v. Ponthier,* 136 Mont. 198, 346 P.2d 974, 978 (1959); 3A *Wigmore on Evidence* (Chadbourn, rev.), § 967; *McCormick on Evidence* (2 ed.), § 40, p. 78; *Anno.,* 62 A.L. R.3d 610 (1958); 75 *Am.Jur.*2d Trial § 115, § 671.

### III.

The second argument of significance made by defendant is that it was error for the Trial Judge not to instruct the jury on the law of accident. He says that the charge on which he was tried (attempted murder in the first degree) and the charge of which he was convicted (assault in the first degree) each require proof beyond a reasonable doubt of a voluntary act on his part,[2] and that the Commentary to § 242 points out that whether an act is voluntary

2. 11 Del.C. § 242 provides:
"A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing."
"Voluntary act" is defined in the next Code Section, 11 Del.C. § 243 which provides:
" 'Voluntary act' means a bodily movement performed consciously or habitually as a result of effort or determination, and includes possession if the defendant knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession."

3. § 303 reads in full as follows:
"(a) No defense defined by this code or by another statute may be considered by

or accidental is a significant factor; it states:

"Where the definition of a crime requires that it be done intentionally, it is a defense to prove that it was done accidentally or by misfortune. Indeed, even if criminal negligence is a sufficient state of mind, accident would still seem to be a defense. Unless culpable negligence is involved, it seems unlikely that the law will have any deterrent effect upon persons whose conduct is accidental."

Defendant argues that there was evidence that the shooting was accidental and that the Trial Judge should have instructed the jury, under 11 Del.C. § 303(c), that an accidental shooting was a defense to the charge. While we agree that defendant was entitled to a jury instruction on "accident", it should have been given pursuant to 11 Del.C. § 302(b), not § 303(c).

 A defendant is entitled to a charge under § 303 if he produces credible evidence to support a "defense".[3] Each Criminal Code "defense" to criminal liability is stated in 11 Del.C. Ch. 4. Since the Code is the exclusive criminal law of Delaware, see 11 Del.C. § 103(a), § 202(a), and since "accident" is not included as a defense in Chapter 4, it follows that an accident instruction is not appropriate under § 303(c) which applies only to "defenses".[4]

the jury unless the court is satisfied that some credible evidence supporting the defense has been presented.
"(b) Evidence supports a defense when it tends to establish the existence of each element of the defense.
"(c) If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit him if they find that the evidence suggests a reasonable doubt as to the defendant's guilt."

4. *Compare State v. Phillips,* Del.O. & T., 7 W.W.Harr. 544, 187 A. 108 (1936) in which Chief Justice Layton stated that whether a "defense—by accident is made out depends in part upon the lawfulness of the act of the accused who sets up such defense". Here, there has been no showing that defendant

■ 11 Del.C. § 302(b) provides:

"(b) The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt."

We have set out in a footnote some of the evidence which bears on the voluntary character of the shooting.[5] Collectively, at least, such evidence was sufficient to invoke the reasonable doubt provisions of the statute. And so, if on retrial the Court finds that a reasonable juror might believe from that or similar evidence that the shooting was accidental, defendant is entitled to a charge under § 302(b).

The State contends that because defendant had not requested a jury instruction on accident, we may not examine this issue on appeal.

■ An appellate court will not ordinarily consider a question which has not been fairly presented to the Court below, *Rickards v. State,* Del.Supr., 6 Terry 573, 77 A.2d 199 (1950); but

"[a]n exception to the general rule exists in case of material defects which are

apparent on the face of the record and which are basic, serious, and fundamental in their character, and which clearly deprive accused of a substantial right, or which clearly show manifest injustice, . . . ." [footnotes omitted] 24 *C.J.S.* Criminal Law § 1669.

See also 4 *C.J.S.* Appeal & Error § 245. The "plain error" exception has also been adopted in the Federal Rules of Evidence; thus rule 103(d) provides:

"Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

■ Given the quantum of evidence as to an accidental shooting and its relevancy to reasonable doubt, we conclude that it falls within the plain error rule.

## IV.

■ Defendant also argues that during *voir dire* of the jury panel the Court should have proposed questions relating to presumption of innocence, reasonable doubt and burden of proof in a criminal trial. There is no merit to that argument. *Jacobs v. State,* Del.Supr., 344 A.2d 385 (1975); *Parson v. State,* Del.Supr., 275 A.2d 777 (1971).

Reversed.

---

was engaged in a lawful act when the shooting occurred.

5. On cross examination Jenkins was asked about his sworn testimony in a prior hearing, thus:
"Question: Well, do you think you told him [Detective Schneider] you were shot by Richard Ward intentionally at that time?
" 'Answer: No, at that time I told him it was an accident. I remember saying it was an accident. I don't remember the target shooting part of it.'
Do you remember giving that testimony under oath?
"A Yes."
And Detective Schneider testified:
"Q And did he [Jenkins] indicate on that occasion who had shot him?

"A Yes, that was when he told us about the accidental shooting involving Mr. Ward.

\*　\*　\*　\*　\*

"Q With regard to your investigation, what further action did you take?
"A Mr. Jenkins at that time claimed the shooting to be purely accidental, that he desired no prosecution, didn't wish to get involved."

\*　\*　\*　\*　\*

"Q And based on his [Detective Koston] conversation with Mr. Ward, together with information from Anthony Jenkins, isn't it a fact that you closed this case as an accidental shooting?

"A Yes, sir."