23131

The STATE, Respondent v. Joyce Lee McCASKILL, Appellant.

(387 S. E. (2d) 268)

Supreme Court

*Jack B. Swerling* of *Swerling & Harpootlian,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard Oct. 31, 1989.

Decided Jan. 8, 1990.

HARWELL, Justice:

Appellant Joyce Lee McCaskill shot and killed Donna Scott during a domestic quarrel. Appellant was sentenced to twenty years for voluntary manslaughter and a concurrent five year sentence for possession of a weapon during a violent crime.

## I. FACTS

In January of 1987, Glenn and Donna Scott separated after being married for twenty-three years. At that time, Glenn made public his three or four year old relationship with appellant. As a result of the temporary and final divorce hearings, Glenn was awarded possession of the marital home and custody of his and Donna's youngest child,

Kevin. Donna was restrained from going near the home except to exercise her visitation rights. The weekend after the final divorce hearing, appellant moved into the marital home with Glenn.

In either late September or early October of 1987, appellant was overheard as saying that if Donna ever "got in her face" again, apparently referring to some previous incident that occurred between them in March or April of 1987, she would kill her. Appellant also made statements to the effect that she would not let anyone take Glenn away from her and that nobody was going to stand in her way.

On the evening of October 15, 1987, appellant and Glenn were watching television in the den of their home when the doorbell rang. Kevin went to the back door and let Donna in the house. As Donna entered the house, Glenn walked into the kitchen. Donna followed him. They both went into Kevin's room. While Donna stayed there to talk to Kevin, Glenn returned to the den. Donna left Kevin's bedroom and entered the den. She sat down on the coffee table in front of where appellant was sitting on the couch. Donna then told appellant that she had loved Glenn since she was eleven years old and that they were getting back together. Upon hearing this, appellant looked at Glenn and asked if this was true. Glenn indicated that it was true.

Donna then slapped appellant. Glenn separated them and pushed both of them back. Appellant picked up a plastic flower arrangement from the coffee table and threw it at Glenn. Glenn told appellant that if she did not quit, he was going to "beat her up." Appellant testified that because Glenn's words and actions frightened her, she ran into the master bedroom to get a gun in order to protect the unborn child she was carrying. Glenn saw her carrying the gun in front of her and it appeared to him that the hammer was cocked. Glenn testified that he was afraid appellant was going to shoot him and that a bullet would pass through him and injure Donna, who was standing behind him, so he reached back and pulled Donna to his side. Glenn then ran and threw himself upon appellant. The gun fired, hitting Donna. It is unclear as to whether the gun was fired before or after Glenn moved toward appellant. There was testimony that appellant had turned toward Donna before firing.

Appellant and Glenn drove Donna to the emergency room, where she subsequently died. A jury found appellant guilty of voluntary manslaughter and possession of a weapon during a violent crime. This appeal follows.

## II. DISCUSSION

### A. TRIAL JUDGE'S INSTRUCTIONS: UNINTENTIONAL SHOOTING WITHIN THE CONTEXT OF SELF-DEFENSE AND POSSESSION OF A WEAPON

Throughout trial, appellant maintained that she got the gun from the bedroom in case she needed to use it to defend herself and her unborn child. She argued that her right to *possess* the gun in self-defense was distinct from the issue of whether she was entitled to *use* the gun in self-defense. Appellant claimed that she was lawfully entitled to arm herself in self-defense in case deadly force was necessary, but that the lethal charge was fired accidentally.

Consistent with her theory that the shooting was accidental, appellant requested that the trial judge charge the jury that she was lawfully entitled to arm herself in self-defense to meet a potential threat and that he place such instruction in the context of her testimony that the shooting was accidental. The trial judge charged the jury as to what constitutes an accidental shooting and a shooting in self-defense. He also charged that one has the right to arm oneself in self-defense where the shooting occurs *intentionally* in self-defense, but he did not clarify that the same right exists where the shooting occurs *accidentally*. The trial judge's instructions focused on the *use* of the weapon in self-defense. In effect, the trial judge's failure to instruct the jury that appellant had the right to have the gun in her possession to protect herself in the situation where the shooting occurred accidentally conveyed to the jury that her willful act of arming herself foreclosed the defense of an accidental shooting.

Where a defendant claims that he armed himself in self-defense, while also claiming that the actual shooting was accidental, this combination of events can "place the shooting in the context of self-defense." *People v. Brooks*, 130 Ill. App. (3d) 747, 751, 86 Ill. Dec. 90, 94, 474 N. E. (2d) 1287, 1290 (1985).

> [A] homicide is excused when caused by the discharge of a gun ... where the accused is *lawfully* acting in self-defense and the victim meets death by accident, through the unintentional discharge of a gun or the like ... On the other hand, a homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was *lawful* ...

40 Am. Jur. (2d), *Homicide,* § 112 (1968) (emphasis added). Because, the defense of accident is not applicable unless the defendant was acting *lawfully,* it is necessary to instruct the jury as to what constitutes a lawful enterprise.

The facts reveal that appellant had been slapped by Donna and shoved by Glenn immediately before she got the gun. Additionally, testimony revealed that Donna had great animosity towards appellant and had previously attacked her. The trial judge erred in failing to charge that appellant had a right to possess a weapon in her home. This instruction would have aided the jury in evaluating the lawfulness of appellant's actions. The trial judge also erred in failing to charge that if appellant lawfully armed herself in self-defense because of a threat to her safety created by the decedent, and the gun accidentally discharged, the jury would have to find her not guilty. The trial judge's traditional self-defense charge which focused only on the right to *use* the weapon in self-defense was inadequate. *Braxton v. Commonwealth,* 195 Va. 275, 77 S. E. (2d) 840 (1953). Accordingly, we reverse this case and remand for a new trial.

## B. TRIAL JUDGE'S INSTRUCTIONS: BURDEN OF PROOF IN CONTEXT OF SELF-DEFENSE

Appellant contends that she was prejudiced by the trial judge's instruction on the proper burden of proof. While we need not fully address this issue, the relevant portion concerning the burden of proof in the model self-defense charge which was first enunciated in *State v. Davis,* 282 S. C. 45, 317 S. E. (2d) 452 (1984) and made mandatory in *State v. Glover,* 284 S. C. 152, 326 S. E. (2d) 150 (1985), *cert. denied,* 471 U. S. 1068, 105 S. Ct. 2147, 85 L. Ed. (2d) 503 (1985) is set forth below:

> If you have a reasonable doubt of the defendant's guilt

after considering all the evidence including the evidence of self-defense, then you must find him not guilty. On the other hand, if you have no reasonable doubt of the defendant's guilt after considering all the evidence including the evidence of self-defense then you must find him guilty.

We need not discuss appellant's remaining exceptions. This case is reversed and remanded for a new trial.

Reversed and remanded.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.