513 S.E.2d 104

**The STATE, Respondent,**

v.

**Demetric BURRISS, Appellant.**

**No. 24903.**

Supreme Court of South Carolina.

Heard Jan. 8, 1997.

Decided Feb. 16, 1999.

Daniel T. Stacey, Chief Attorney, and Joseph L. Savitz, III, Deputy Chief Attorney, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, of Columbia; and George M. Ducworth, Solicitor, Tenth Judicial Circuit, of Anderson, for respondent.

WALLER, Justice:

A jury convicted Appellant Demetric Burriss of murder, possession of a firearm during the commission of a violent crime, and possession of a firearm by a person under the age of twenty-one. Appellant contends the trial judge erred in refusing to instruct the jury regarding the law of accident and involuntary manslaughter. We agree and reverse.

## FACTS

The facts, viewed in the light most favorable to Appellant, present the following scenario. On the afternoon of May 31, 1994, Appellant went to visit a friend at his apartment. Several other people were there when he arrived, including Kenneth Scott, the victim in this case, and James Pickens. Kenneth and James were smoking "lace," marijuana cigarettes laced with crack cocaine.

While Appellant was waiting for his friend to come out of the apartment, Kenneth asked him if he had any drugs. When Appellant told him he did not, Kenneth stated he would send James down the block to get some and if James was unsuccessful, they would rob Appellant. At the time, Appellant had one hundred dollars on his person. James went down the block and returned two or three minutes later without drugs. Kenneth and James then attacked Appellant, throwing him on the ground and trying to get into his pockets. Appel-

lant drew a gun from his pocket and shot twice into the ground,[1] causing both Kenneth and James to back away. Kenneth ran inside the house and James stayed near Appellant in the yard. As Appellant was attempting to get off the ground, Kenneth came to the back door of the apartment, standing partially behind a screen door, and James again began advancing towards Appellant. Appellant picked up his gun and it went off, killing Kenneth.

Appellant was sixteen years old at the time this incident took place.

## ISSUES

I. Did the trial judge err in refusing to instruct the jury on the law of accident?

II. Did the trial judge err in refusing to instruct the jury on the law of involuntary manslaughter?

## DISCUSSION

### I. Accident

■ Appellant argues the trial judge should have instructed the jury on the law of accident. We agree.

■ For a homicide to be excusable on the ground of accident, it must be shown the killing was unintentional, the defendant was acting lawfully, and due care was exercised in the handling of the weapon. *State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994). The dispositive issue in this case is whether there was evidence Appellant was acting lawfully when the fatal shooting occurred.[2] The trial judge found Appellant was not acting lawfully because he was in unlawful possession of a firearm. Appellant argues he armed himself in self-defense but the fatal shot occurred when the gun fired accidentally.

---

1. The second time the gun only "clicked."

2. Unlawful possession of a pistol by a person under the age of twenty-one is a felony. S.C.Code Ann. § 16–23–30(e) (1985); S.C.Code Ann. § 16–23–50(A)(1) (Supp.1996).

We have previously addressed similar cases involving claims a gun accidentally discharged while the shooter was armed in self-defense. For example, in *State v. McCaskill*,[3] the defendant (McCaskill) and the victim were involved in a domestic quarrel in McCaskill's home. McCaskill, being afraid, armed herself with a gun, which she claimed subsequently fired by accident. We held the trial judge's separate jury instructions on self-defense and accident were insufficient when the defendant claimed she armed herself in self-defense but the shooting occurred accidentally:

> In effect, the trial judge's failure to instruct the jury that appellant had the right to have the gun in her possession to protect herself in the situation where the shooting occurred accidentally conveyed to the jury that her willful act of arming herself foreclosed the defense of an accidental shooting.
>
> Where a defendant claims that he armed himself in self-defense, while also claiming that the actual shooting was accidental, this combination of events can "place the shooting in the context of self-defense."
>
> [A] homicide is excused when caused by the discharge of a gun ... where the accused is lawfully acting in self-defense and the victim meets death by accident, through the unintentional discharge of a gun or the like.

*Id.* at 259, 387 S.E.2d at 269–70 (internal citations omitted). We held the trial judge erred in "failing to charge that if appellant lawfully armed herself in self-defense because of a threat to her safety created by the decedent, and the gun accidentally discharged, the jury would have to find her not guilty." *Id.* at 259, 387 S.E.2d at 270.

The rule in *McCaskill* is abundantly supported by case law from other jurisdictions. "Where the defense of excusable homicide by misadventure is relied on, the principles of self-defense may be involved, not for the purpose of establishing defense of self, but for the purpose of determining whether accused was or was not at the time engaged in a lawful act; and it has been held that in such case the right, but not the law, of self-defense is invoked." 40 C.J.S. *Homicide* § 111(C) (1991). *See also Jabich v. People*, 58 Colo. 175, 143 P. 1092

---

3. 300 S.C. 256, 387 S.E.2d 268 (1990).

(1914) (en banc); *State v. Phillips*, 37 Del. 544, 187 A. 108 (1936); *Gunn v. State*, 174 Ind.App. 26, 365 N.E.2d 1234 (1977); *State v. Crowley*, 345 Mo. 1177, 139 S.W.2d 473 (1940) (accident charge warranted where defendant testified he drew a gun to defend himself and it went off accidentally); *Commonwealth v. Turner*, 24 Mass.App.Ct. 902, 506 N.E.2d 151 (1987) ("defendant. could invoke the right of self-defense in arguing that his act which accidentally resulted in the killing of [the victim] was not itself unlawful") (internal quotations omitted); *Valentine v. Commonwealth*, 187 Va. 946, 48 S.E.2d 264 (1948).[4]

We expanded the holding in *McCaskill* when we revisited this issue four years later in *Goodson*, 312 S.C. at 278, 440 S.E.2d at 370. In *Goodson*, the defendant (Goodson) and a third party got into an argument over a pool game at a bar. The bar owner escorted Goodson outside when he drew a gun. Once outside, Goodson shot and killed the bar owner and was subsequently convicted of murder. On appeal, Goodson asserted he was entitled to jury charges on self-defense and accident. We first found Goodson was not entitled to a self-defense charge because there was no evidence showing he either believed or actually was in imminent danger of losing his life or sustaining bodily injury when he shot the bar owner.

We then found Goodson was not entitled to a charge of accident because he was not acting lawfully when the shooting occurred. However, we based this determination solely on the lack of evidence Goodson was acting in self-defense. We

4. In *Gunn*, the defendant (Gunn) and the victim were in an argument when Gunn claimed a gun they were struggling over went off accidentally. Gunn sought to introduce evidence to support a theory of self-defense, both as an independent defense to the homicide as well as to support a defense of accident. In finding this evidence admissible, the court rejected the state's argument Gunn was not acting lawfully because he drew the gun in violation of state law, noting if Gunn was acting in self-defense he would not have violated this statute. 365 N.E.2d at 1238–40. The statute at issue in *Gunn* is substantially similar to South Carolina's "pointing and presenting" statute (upon which the dissent partially relies in its argument Appellant was not acting lawfully). *See* S.C.Code Ann. § 16–23–410 (Supp.1996) ("It is unlawful for a person to present or point at another person a loaded or unloaded firearm"). Section 16–23–410 specifically states (as did the Indiana statute) its provisions should not be "construed to abridge the right of self-defense."

specifically rejected "the State's claim that because Goodson unlawfully possessed a firearm, the defense of accident is precluded. Rather, the burden rests upon the State to prove beyond a reasonable doubt that the unlawful act in which the accused was engaged was at least the proximate cause of the homicide." 312 S.C. at 280 n. 1, 440 S.E.2d at 372 n. 1.[5] *See also* 40 Am.Jur.2d *Homicide* § 75 (1968) ("The fact that one carries a concealed weapon in violation of the law does not render him criminally responsible . . . where death is caused by the accidental discharge of the weapon, for in such case death cannot be said to be the natural or necessary result of carrying the weapon in violation of law") [hereinafter 40 Am.Jur.2d].

Read together, *McCaskill* and *Goodson* stand for the proposition that a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting. Thus, if the circumstances of this case show Appellant was entitled to arm himself in self-defense when the gun went off, he would be entitled to a charge of accident. It is well-settled the law to be charged is determined from the evidence presented at trial, and if any evidence exists to support a charge, it should be given. The trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence. *See State v. Hill,* 315 S.C. 260, 433 S.E.2d 848 (1993). We find

5. This language is susceptible of two different interpretations. First, it could mean that unlawful possession of a firearm can **never** constitute an unlawful activity so as to preclude an accident defense because it can **never** be the proximate cause of the homicide. Second, it could mean that unlawful possession of a firearm can in some cases constitute unlawful conduct so long as the State proves proximate cause. The confusion is compounded by the fact that the majority opinion never clearly specified what of the defendant's conduct constituted the unlawful activity to preclude the accident defense, i.e. whether in this case it was his unlawful possession of a firearm or some other conduct. Justice Toal's concurring opinion highlighted this lack of clarity when she stated she would have specifically held Goodson was not lawfully armed when he shot the victim because he had no self-defense claim at that time; and under those circumstances his unlawful possession would be a proximate cause of the homicide. 312 S.C. at 281–82, 440 S.E.2d at 372–73. We agree with Justice Toal's analysis and interpretation, clarifying *Goodson* as holding unlawful possession of a firearm can under some circumstances constitute an unlawful activity so as to preclude an accident defense if it is the proximate cause of the killing.

evidence in the record to support Appellant's claim he armed himself in self-defense at the time of the fatal shooting.[6]

According to Appellant, when he arrived at the house, Kenneth and James were smoking crack cocaine-laced marijuana cigarettes. He testified their eyes were "big like they was getting crazy or something." The two threatened to rob him. Appellant drew his gun after being physically attacked and thrown to the ground by Kenneth and James.[7] Kenneth then ran into the house "like he was going to get something." When Kenneth returned, he was standing behind a screen door. Appellant could not see Kenneth's hands and was afraid he had gone into the house to get a gun. As Appellant was getting off the ground, Kenneth told James to "get that punk." When James began moving threateningly toward Appellant, he snatched his gun up and it fired. Appellant stated he was scared and his hand was shaking when the gun went off: "It was an accident. I didn't try to shoot nobody." [8]

Although the dissent argues otherwise, the factual scenario of this case is markedly different from that in *Goodson*. In *Goodson*, the defendant left the scene of the argument and shot someone who was not the party originally threatening

---

6. In South Carolina, the following elements establish self-defense and are thus relevant to this analysis: 1) the defendant must be without fault in bringing on the difficulty; 2) the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger; 3) if his defense is based upon his belief of imminent danger, a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; if the defendant actually was in imminent danger, the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow to save himself from serious bodily harm, or losing his own life; and 4) the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance. *Goodson*, 312 S.C. at 280, 440 S.E.2d at 372 (quoting *State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984)).

7. Kenneth, the victim, was 6'3"; Appellant was 5'9".

8. The dissent also points to Appellant's testimony that "my hand was on the trigger. The trigger was pulled or whatever." However, the record shows this testimony was given in answer to a question regarding the **second** shot. We interpret "second" shot as used by the solicitor to mean the shot wherein Appellant "clicked" at the ground, not the fatal shot.

him in the bar. Here, Appellant had been threatened by both Kenneth (the victim) and James. An eyewitness to the shooting testified when Kenneth ran into the house, she tried to get him to leave through the front door. He refused, instead going back to taunt and threaten Appellant while standing partially hidden through a screen door.

The dissent also argues that any lawfulness in Appellant's being armed after the initial attack ended when Kenneth ran into the house and James stepped away from him because Appellant was no longer threatened and was free to leave. However, this overlooks the fact that Kenneth came back to the screen door, made threatening remarks to Appellant, and urged James, who never left the yard but stayed near Appellant while Kenneth was inside the house, to attack Appellant again. Appellant could not see Kenneth's hands and James started toward him. Furthermore, the dissent overlooks the timing of these events. Appellant testified he was still on the ground, beginning to get up, when Kenneth reappeared at the door and James started after him again.[9] The lapse of time between Kenneth's retreat and his reappearance thus could not have been more than a few seconds. Appellant's testimony also contradicts a finding he was free to leave in light of the fact he was still on the ground and only a short period of time had elapsed.

Therefore, in light of the precedent established in *Goodson* and *McCaskill*, we find a jury charge on the law of accident warranted under the facts of this case.

## II. Involuntary Manslaughter

 Appellant argues the trial judge erred in refusing to submit the lesser-included offense of involuntary manslaughter to the jury. We agree.

 Involuntary manslaughter is defined as either (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the killing of another without malice and unintentionally, but while one is acting lawfully

---

9. For all we know, Appellant was in fact preparing to leave.

with reckless disregard of the safety of others. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996). "[T]o warrant the court in eliminating the offense of manslaughter it should very clearly appear that there is *no evidence whatsoever* tending to reduce the crime from murder to manslaughter ." *Casey v. State,* 305 S.C. 445, 447, 409 S.E.2d 391, 392 (1991) (internal citations omitted). Again, the pivotal issue is whether Appellant was engaged in a lawful activity at the time of the killing. For the same reasons discussed above, we find the evidence in the record supports Appellant's claim he was acting lawfully when the gun fired, killing Kenneth.

Although *Goodson* only specifically dealt with whether unlawful possession of a weapon would preclude an accident defense, it would be incongruous not to apply this same reasoning in the context of involuntary manslaughter. *See generally* Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law 79 (1972) (discussing causal connection required between unlawful act and homicide to find involuntary manslaughter). The evidence would support a finding Appellant was lawfully armed in self-defense at the time the fatal shot occurred.[10] This court has found the negligent handling of a loaded gun will support a finding of involuntary manslaughter. *See, e.g., State v. White,* 253 S.C. 475, 171 S.E.2d 712 (1969). Therefore, under the circumstances of this case, the trial judge should have instructed the jury on involuntary manslaughter.[11]

---

**10.** There is a difference between being lawfully *armed* in self-defense and *acting* in self-defense, as Justice Toal noted in her concurring opinion in *Goodson,* 312 S.C. at 281, 440 S.E.2d at 373. In this case, Appellant's self-defense theory only relates to his right to be armed, not his actions in shooting Kenneth. Our recent opinion in *State v. Pickens* may be distinguished from this case because there we based our decision on the fact defendant admitted he shot intentionally. 320 S.C. 528, 532, 466 S.E.2d 364, 366 (1996) (facts did not support a charge of involuntary manslaughter where the defendant claimed he "acted lawfully but recklessly in defending himself"). Here, Appellant claimed the shooting was not intentional.

**11.** The dissent's reliance on Appellant's previous action of shooting the gun into the ground to find he was not engaged in a lawful activity at the time of the subsequent, fatal shooting, is misplaced. In light of the rule the unlawful activity must proximately cause death, *see State v. Brown,* 205 S.C. 514, 32 S.E.2d 825 (1945), we find it improper to preclude an accident defense based on Appellant's prior actions under

For the foregoing reasons, Appellant's murder conviction is reversed and this case is remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

FINNEY, C.J., TOAL and MOORE, JJ., concur.

BURNETT, J., dissenting in a separate opinion.

BURNETT, Justice:

I respectfully dissent. In my opinion, the trial judge properly refused to charge the jury on the law of accident and involuntary manslaughter.

## FACTS

Kenneth Scott was shot and killed by appellant. According to appellant, he and four other teenagers, including James Pickens and Kenneth Scott, were together outside of an apartment. Appellant was sixteen years old. James and Kenneth were smoking "lace." Kenneth asked appellant if he had any drugs; appellant denied having any. Kenneth said he would send James to find some drugs and if he didn't find any, they would rob appellant.

James left and returned two to three minutes later. He grabbed appellant and threw him to the ground, apparently in an attempt to rob him. Kenneth tried to reach into appellant's pockets. From his position on the ground, appellant reached into his back pocket, snatched out a gun, and fired a shot into the ground. James jumped away and Kenneth ran inside the apartment. Appellant did not know if Kenneth was going after a gun. Appellant attempted to shoot the gun into the ground a second time but it misfired.

Kenneth returned, opened the screen door of the apartment, and told appellant to "go on and shoot; he could take a bullet." He told James to "get that punk;" "he ain't going to shoot

---

the facts of this case. Rather, the inquiry must be whether Appellant was acting lawfully when the fatal shooting occurred. *Cf.* 40 Am.Jur.2d at § 13 (1968) ("[T]he tort liability concept of proximate cause is not a proper criterion of causation in a criminal homicide prosecution, which requires more direct causal connection to be shown than will suffice to ground a civil recovery").

nobody." James advanced towards appellant, and appellant's gun was fired as he was getting off the ground. The bullet entered the partially opened screen door and struck Kenneth between the eyes. Appellant was four feet away from Kenneth.

With regard to the third shot, appellant testified he was scared and could not see Kenneth's hands. Appellant stated his own "hand was on the trigger. The trigger was pulled or whatever. It was an accident. I didn't try to shoot nobody." He also testified he did not shoot the gun, but snatched the gun and it went off. Appellant maintained he "did not aim to kill nobody."

Appellant testified he bought the gun to impress his friends, not for protection. He stated all the people in the neighborhood carried guns. On the day of Kenneth's death, neither Kenneth nor any of the other teenagers were armed.

## DISCUSSION

The majority finds appellant was lawfully armed in self-defense at the time of the fatal shot and, therefore, he was entitled to a charge on the law of accident.[1] disagree. In my opinion, there is no evidence appellant was lawfully armed in self-defense at the time he fired the fatal shot.[2]

There are four elements of self-defense. *State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994). Two are relevant here: (1) the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily. injury, or he actually was in such imminent danger and (2) the defendant had no other probable means of avoiding the danger

---

[1]. *See State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994) (the unlawful possession of a firearm does not automatically preclude the defense of accident when the defendant rightfully armed himself in self-defense); *State v. McCaskill,* 300 S.C. 256, 259, 387 S.E.2d 268, 270 (1990) ("[a] homicide is excused when caused by the discharge of a gun ... where the accused is *lawfully* acting in self-defense and the victim meets death by accident, through the unintentional discharge of a gun or the like ... On the other hand, a homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was *lawful.*") (italic in original).

[2]. Although the trial judge instructed the jury on self-defense, this fact is not dispositive.

of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance. *Id.* "The law says if one can give back or step aside, or retreat without increasing his danger, and thus avoid taking human life, it is his duty to do so, and unless he has done so, it will not permit his plea of self-defense." *State v. George,* 119 S.C. 120, 121, 111 S.E. 880 (1921).

It is clear from appellant's own testimony, when Kenneth went inside the apartment, ostensibly to obtain a weapon, appellant was no longer in imminent danger and he was free to leave the premises.[3] Instead, appellant remained outside of the apartment, apparently to see if Kenneth would return with a gun. Under these circumstances, appellant was not lawfully entitled to arm himself in self-defense. *See Martinez v. State,* 775 S.W.2d 645 (Tex.Cr.App.1989) (defendant not entitled to charge on self-defense where, after victim grabbed defendant's shirt and defendant reasonably believed victim was reaching for a knife, defendant stepped away and began firing handgun; court determined reasonable person would have retreated from victim).

Moreover, these facts are similar to those in *State v. Goodson, supra,* where the defendant was involved in an argument inside a bar, was threatened with a pool cue, and responded by drawing a gun. The victim escorted the defendant out of the bar and the defendant shot the victim. The majority held the defendant was not entitled to a charge on accident even though he testified the gun "just went off" as the victim was "coming at him." The majority concluded the defendant was not entitled to a charge on accident because he was not acting in self-defense. Justice Toal's concurrence noted, "[a]ssuming the incident inside the bar gave rise to a self-defense claim sufficient to render [the defendant's] act of arming himself lawful, any lawfulness in [the defendant's] being armed ended when he was no longer threatened." *Id.,* 312 S.C. at 282, S.E.2d at 373.[4]

---

3. Appellant did not live in the apartment.

4. The majority suggests *Goodson* is unlike the present case because the victim was not the aggressor. The identity of the aggressor is not dispositive in this case. The applicable principle from *Goodson* is once

Assuming James' attack authorized appellant to lawfully arm himself in self-defense, any lawfulness in being armed ended when James released appellant and stepped aside, and Kenneth went inside the apartment. At this point in time, appellant was no longer in imminent danger and he had a duty to leave. Instead, appellant remained at the apartment, apparently to see if Kenneth was obtaining a weapon. Appellant fired his own gun a third time. Based on these facts given by appellant, at the time the fatal shot was fired, appellant was no longer lawfully armed in self-defense and he was not entitled to a charge on accident. *State v. Todd,* 290 S.C. 212, 349 S.E.2d 339 (1986) (the law to be charged is determined from the evidence presented at trial).

Likewise, appellant was not entitled to a charge on involuntary manslaughter. Involuntary manslaughter is defined as either (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm or (2) the killing of another without malice and unintentionally, but while one is acting lawfully with reckless disregard of the safety of others. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996).

Appellant was not entitled to a charge under the first definition of involuntary manslaughter. According to his own testimony, at the time he possessed the firearm he was sixteen years old. With other individuals present, he removed the pistol from his pocket, fired it twice, and then continued to hold the pistol with his finger on the trigger. Appellant's possession and his use of the weapon constituted two felonies: possession of a firearm by a person under the age of twenty-one and pointing and presenting a firearm.[5] Accordingly, while he may not have intended to pull the trigger the third time, appellant's conduct precluded a charge on involuntary manslaughter. *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995) (where the defendant unintentionally kills the victim

the threat to the defendant's safety subsides, he is no longer entitled to arm himself in self-defense.

5. *See* S.C.Code Ann. § 16–23–30(e) (1985) & S.C.Code Ann. § 16–23–50(A)(1) (Supp.1996); S.C.Code Ann. § 16–23–410 (Supp.1996).

while engaged in the commission of a felony, the law of involuntary manslaughter does not apply).[6]

Since I conclude appellant was not acting lawfully in self-defense at the time he fired the fatal shot, his conduct does not fall within the parameters of the second definition of involuntary manslaughter.

The trial judge properly refused to charge involuntary manslaughter. *State v. Johnson,* 324 S.C. 38, 476 S.E.2d 681 (1996) (request to charge on a lesser-included offense is properly refused when there is no evidence the defendant committed the lesser rather than the greater offense).

I would affirm.

---

6. While I agree the negligent handling of a loaded weapon does not preclude a charge on involuntary manslaughter, *State v. White,* 253 S.C. 475, 171 S.E.2d 712 (1969), here, appellant was engaged in felony activity at the time of the shooting.