519 S.E.2d 100

**The STATE, Respondent,**

v.

**Cedric CHATMAN, Appellant.**

**No. 24983.**

Supreme Court of South Carolina.

Heard June 10, 1999.
Decided Aug. 2, 1999.

Joseph L. Savitz, III, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Solicitor Warren B. Giese, all of Columbia, for respondent.

MOORE, Justice:

Appellant was convicted of voluntary manslaughter and sentenced to 25 years, suspended upon the service of 20 years. Appellant appeals the trial court's refusal to give a jury charge on involuntary manslaughter and accident. We affirm in part and reverse in part.

## FACTS

Tim Harris (Victim) was living with Jackie McCants who had two children by appellant. Appellant's son told appellant he was upset because of fighting between Victim and McCants. Approximately three weeks later, appellant and Victim met in a parking lot. Appellant asked to speak privately with Victim. After speaking for a few moments, appellant and Victim began to fight. Victim pinned appellant to the ground, apologized, let appellant up, and then began to walk away. Appellant testified he thought the fight was over. Victim began walking to his car but then turned around and screamed, "Let's go head up." Victim also stated that he had something for appellant. Victim went to his car and leaned into it while Appellant was still sitting on the ground.

Appellant's brother approached Victim. Appellant's brother and Victim then began to fight. A third person broke up this fight and once again Victim headed towards his car. As Victim was leaning into his car, appellant came up behind him and grabbed him. Appellant and Victim fell to the ground and fought for two to three minutes. Victim grabbed appellant's testicles "real hard" while appellant had Victim in a face-to-face "choke hold." Appellant told Victim he would let go if

Victim did.  After several minutes, Victim released appellant and the fight ended.  Appellant got up and walked away but Victim did not.  Victim died as a result of asphyxiation due to manual strangulation.[1]

## ISSUES

1) Did the trial court err in not instructing the jury on involuntary manslaughter?
2) Did the trial court err in not instructing the jury on accident?

## DISCUSSION

1) Involuntary manslaughter

■ Appellant contends the trial court erred in refusing to charge the jury on involuntary manslaughter.  We agree.

■ A trial court should refuse to charge a lesser-included offense only where there is no evidence the defendant committed the lesser rather than the greater offense.  *State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994).  Involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others.  *Bozeman v. State*, 307 S.C. 172, 414 S.E.2d 144 (1992).

■ We think the facts of this case fit under (1) above.  Appellant was engaged in an assault and battery and, under the facts of this case, the battery was not such that naturally tends to cause death or great bodily harm.  "An unintentional killing resulting from an unlawful assault and battery, not of a character of itself to cause death, is involuntary manslaughter ..."  40 C.J.S. Homicide § 40 (1991).  *See also People v. Johnson*, 100 Ill.App.2d 13, 241 N.E.2d 584 (1968) (death resulting from blow from fist may be involuntary manslaughter because although unlawful, a blow to the face with hand is not likely to be attended with dangerous or fatal consequences); *State v. Cobo*, 90 Utah 89, 60 P.2d 952 (1936) ("the great weight of authority is that an unintentional killing,

---

1.  This type of strangulation differs from ligature strangulation, such as strangulating someone with a rope or tie.

resulting from an unlawful assault and battery which in and of itself is not of a character to cause death, is held to constitute involuntary manslaughter...").

Here, the evidence establishes that appellant was not attempting to strangle Victim with his hands. Appellant testified that while on the ground he and Victim were facing one another and appellant had his shoulder pressed into Victim's neck. The doctor who performed the autopsy on Victim testified that his medical findings were consistent with sufficient force being applied to Victim's neck and further his findings were consistent with the Victim and appellant being face-to-face and appellant pressing his shoulder into Victim's neck. This is not the traditional strangulation type situation. Appellant was not attempting to strangle Victim by placing his hands around Victim's neck. As such, we think appellant's actions were not the kind which would naturally tend to cause serious bodily injury or death. Under the facts of this case, we think appellant was entitled to a charge on involuntary manslaughter.

### 2) Accident

Appellant contends the trial court erred in refusing to charge the jury on accident. We disagree.

A homicide will be excusable on the ground of accident when (1) the killing was unintentional, (2) the defendant was acting lawfully, and (3) due care was exercised in the handling of the weapon. *State v. Goodson*, 312 S.C. 278, 440 S.E.2d 370 (1994). A homicide is not excusable on the ground of accident unless it appears that the defendant was acting lawfully. *Arnette v. State*, 306 S.C. 556, 413 S.E.2d 803 (1992); *State v. McCaskill*, 300 S.C. 256, 387 S.E.2d 268 (1990). Here, appellant was not acting lawfully, since he was engaged in an assault and battery, unless he was acting in self-defense.

To establish self-defense, there must be evidence (1) appellant was without fault in bringing on the difficulty; (2) appellant actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and (4) appellant had no other probable means of avoiding the danger. *State v. Bruno*, 322 S.C. 534, 473 S.E.2d 450 (1996).

Appellant testified that after he and Victim had the initial fist fight and Victim began walking towards his car stating that he had something for appellant, he thought Victim was retrieving a gun from his car. Appellant stated his brother began fighting with Victim before Victim had a chance to get anything from his car. A third person separated appellant's brother and Victim. Appellant testified Victim then continued to Victim's car and was bending into the car looking under the seat. Appellant stated he grabbed Victim from behind and the two began to "tussle." He testified he never saw a gun.

■ Appellant was not in imminent danger when he grabbed Victim; appellant could have left and avoided any danger; appellant was at fault in bringing on the difficulty; and a reasonably prudent person would not have thought he was in imminent danger. The evidence does not support that appellant was acting in self-defense. If appellant was not acting in self-defense, then he could not have been acting lawfully and he was not entitled to an accident charge. *See State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994) (appellant was not entitled to accident charge because there was no evidence appellant was acting lawfully in self defense).

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., TOAL, WALLER, and BURNETT, JJ., concur.