THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Kenji Manning,       
Appellant.
 
 
 

Appeal From Spartanburg County
John C. Hayes, III, Circuit Court Judge

Unpublished Opinion No. 2003-UP-248
Submitted January 29, 2003 - Filed April 
 2, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Robert  M. Dudek, of Columbia; 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, 
 of Columbia; Harold W. Gowdy, III, of Spartanburg; for Respondent.
 
 
 

PER CURIAM:  Kenji Manning was convicted 
 of murder and two counts of assault with intent to kill.  He received concurrent 
 sentences of forty years for murder and ten years for each assault charge.  
 Manning appeals.
FACTS
Michael Bohn, his brother, and a friend were in line at a 
 McDonalds drive-thru when they were approached by Manning and his brother.  
 As Manning and his brother ran towards the car, Michael and his friends drove 
 out of the parking lot. [1]   After Manning and his brother chased the car 
 on foot for approximately twenty feet, they got into their own car and followed 
 the victims for four miles, arriving at Michaels house.  Manning and his brother 
 drove up to the end of Michaels driveway.  One of the victims testified that 
 when Manning and his brother reached the end of the driveway, they stopped 
 and started firing.  The Mannings car then sped away.  
While Michaels brother and friend were not injured, Michael 
 suffered  a fatal shot to the head.  The two men then broke into Michaels house 
 and called 9-1-1.  Both of the surviving victims testified that, while there 
 were rifles in the house,  neither they nor Michael were armed that day.  The 
 victims also testified that the numerous .22 rifle shells in Michaels yard 
 were shells from an earlier target practice. 
 [2]   
Though Manning did not testify in his own defense, the State 
 introduced the voluntary statement he gave to the police on the day after the 
 incident.  In his signed, handwritten statement, Manning admitted to shooting 
 at the three victims on the evening in question.  Manning said he recognized 
 the victims as the individuals he had gotten into a fight with a couple of weeks 
 before.  He stated he and his brother attempted to talk to the victims at McDonalds, 
 then followed them home in order to ask them why they tried to gang [him].  
 Once outside Michaels house, Manning stated that he fired his gun in the direction 
 of the victims only after he heard a gunshot.  Manning stated that he did not 
 want to shoot anyone, and that he was trying to shoot back in the air at them 
 and scare them.  Manning stated he fired about 2 or 3 times in the air.  

Several police officers and investigators testified that 
 no guns were found in Michaels house or yard, and that the victims were unarmed.  
 These individuals also testified that no shells or casings were found near the 
 front of the house.  Though there were .22 shells in the yard, most were along 
 a fence in the backyard.  The senior police investigator testified that, using 
 bullet holes found in a building on Michaels property, they were able to determine 
 the bullets trajectory.  He testified the bullets had been fired from the driveway.  

After the defense rested its case, the trial judge denied 
 the defenses request to charge self-defense, finding the elements had not been 
 satisfied.  The defense then requested a charge for involuntary manslaughter, 
 arguing Manning was acting in his lawful capacity to defend himself.  The 
 trial judge stated that, as he found a self-defense charge was not merited, 
 he would not charge the jury on involuntary manslaughter.  Manning was subsequently 
 convicted of all three charges and received an aggregate sentence of forty years 
 imprisonment.  
LAW/ANALYSIS
Manning argues the trial court erred in failing to 
 charge the jury on the law of (1) self-defense and (2) involuntary manslaughter. 

I.       Self-Defense
To warrant reversal, a trial judges refusal to 
 give a requested charge must be both erroneous and prejudicial.  State v. 
 Burkhart, 350 S.C. 260, 261, 565 S.E.2d 298, 302 (2002).  If there is any 
 evidence in the record to support self-defense, the issue should be submitted 
 to the jury.  Id. at 260-61, 565 S.E.2d at 302.  A defendant is entitled 
 to a self-defense charge where the evidence shows that:  (1) he was without 
 fault in bringing on the difficulty; (2) he actually believed he was in imminent 
 danger of losing his life or sustaining serious bodily injury; and (3) a reasonably 
 prudent person would have entertained the same belief.  State v. Sullivan, 
 345 S.C. 169, 172-73, 547 S.E.2d 183, 184 (2001).    
Mannings actions on the night of the shooting do 
 not satisfy the elements needed to justify a self-defense charge.  First, Manning 
 was not without fault in the events leading to Michaels death.  Manning originally 
 approached the victims and chased them on foot out of the parking lot.  Manning 
 and his brother, while armed, then got into their car and chased the victims 
 back to Michaels house more than four miles away.   Manning also admitted to 
 shooting in the direction of the victims.
Second, Manning cannot sustain a claim that he believed 
 he was in imminent danger of serious injury or death.  There was no evidence 
 that any of the three victims were armed at the time of the shooting or had 
 threatened Manning with a weapon of any kind.  Further, Manning traveled more 
 than four miles to confront the victims and was inside his car when he opened 
 fire.  As Manning was already in his vehicle, he could have avoided the alleged 
 imminent danger and left the scene.  
Third, a reasonably prudent person in Mannings situation 
 would not have believed they were in imminent danger of serious injury or death.  
 While Manning had a weapon, the victims were unarmed.  Rather than shooting 
 at the victims from inside his vehicle, Manning could have left the scene and 
 avoided the incident.  
Accordingly, the trial court did not err declining 
 to charge the jury on the law of self-defense.
II.      Involuntary Manslaughter
To warrant reversal, a trial judges refusal to 
 give a requested charge must be both erroneous and prejudicial.  State v. 
 Burkhart, 350 S.C. 260, 261, 547 S.E.2d 298, 302 (2002).  Involuntary manslaughter 
 is (1) the unintentional killing of another without malice, but while engaged 
 in an unlawful activity not naturally tending to cause death or great bodily 
 harm;  or (2) the unintentional killing of another without malice, while engaged 
 in a lawful activity with reckless disregard for the safety of others.  See 
 State v. Chatman, 336 S.C. 149, 152, 519 S.E.2d 100, 101 (1999).
The events that transpired on the night of the 
 shooting do not satisfy either definition of involuntary manslaughter.  The 
 first definition is not satisfied because Manning, by firing several shots in 
 the direction of three people, was engaged in an unlawful activity that easily 
 could have, and did, result in death.  The second definition does not apply 
 in this case because Michaels death did not occur while Manning was engaged 
 in a lawful activity.  As such, the evidence does not support a jury charge 
 on the law of involuntary manslaughter.  See State v. Chatman, 
 336 S.C. at 152, 519 S.E.2d at 101.
Further, Mannings chief argument in support of a charge 
 for involuntary manslaughter is that he did not intend to shoot anyone, but 
 merely fired his gun into the air.  However, the supreme court has held on multiple 
 occasions that this scenario does not automatically merit a jury charge for 
 involuntary manslaughter.  See State v. Cooney, 320 S.C. 107, 
 112, 463 S.E.2d 597, 600 (1995) (There is no error in the refusal to charge 
 the law of involuntary manslaughter when the defendant admitted intentionally 
 firing the gun, but claimed he only meant to shoot over the victims head.); 
 see also Bozeman v. State, 307 S.C. 172, 414 S.E.2d 144 (1992); 
 State v. Craig, 267 S.C. 262, 227 S.E.2d 306 (1976).  
Accordingly, the trial court did not err declining 
 to charge the jury on the law of involuntary manslaughter.   
CONCLUSION
Based upon the foregoing, Mannings convictions and 
 sentences are
AFFIRMED.
HEARN, C.J., GOOLSBY and SHULER, JJ., concur.

 
 
 [1] Michaels brother testified that he believed Manning was going to 
 retaliate for a fistfight that occurred between the two of them a couple of 
 weeks earlier.  

 
 
 [2] Three individuals testified that the victims often had target practice 
 in Michaels backyard.  One witness specifically stated that he used his .22 
 rifle in the backyard the day before the shooting.