672 S.E.2d 786

**The STATE, Petitioner/Respondent,**

**v.**

**Danny Orlando WHARTON, Respondent/Petitioner.**

**No. 26591.**

Supreme Court of South Carolina.

Heard Dec. 3, 2008.

Decided Feb. 2, 2009.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Solicitor Robert M. Ariail, of Greenville, for Petitioner/Respondent.

Chief Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondent/Petitioner.

Chief Justice TOAL:

Danny Orlando Wharton was charged with murder and possession of a weapon during a violent crime following the shooting death of Chris Luster (Victim). The trial court

charged the jury on the law of murder and voluntary man-slaughter, but refused to charge the jury on involuntary manslaughter and accident. The jury found Wharton guilty of voluntary manslaughter and weapons possession. The court of appeals held that the trial court erred in giving a voluntary manslaughter charge and reversed Wharton's conviction. *State v. Wharton*, 366 S.C. 56, 620 S.E.2d 83 (Ct.App.2005). This Court granted a writ of certiorari to review the court of appeals' decision. We affirm in part and vacate in part.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of the shooting, Wharton and a group of friends were at a house playing cards and drinking. Pamela Suber, Wharton's ex-girlfriend, arrived at the house and be-gan arguing with Wharton over Wharton's new girlfriend. After Suber left, Wharton became extremely angry and resist-ed his friends' attempts to calm him. He then made a call to another person, in which he stated that "I ain't going to be punked out no more" and instructed the person to bring a weapon to the house.

At trial, Chraius Geter testified that after Wharton made the call, a car arrived at the house. Wharton retrieved a gun from inside the car and began walking in the street, swinging the gun. Wharton then "bumped" Clifton Shaw, another friend at the house and again said "I ain't going to be punked." Geter testified that Shaw stated that he did not want to fight Wharton, but Wharton "swung the gun like was pointing to shoot in the air" and the gun fired, fatally hitting Victim.

Edward Morris Wharton (Edward) testified that after Su-ber left, Wharton went into a rage and that when Wharton and Shaw began arguing, Victim attempted to prevent the two men from fighting. Edward testified that Shaw placed his chain necklace down his shirt as if they were about to fight. Wharton then retrieved the gun from the car and pulled it out meaning to fire a shot into the air, but fatally shot Victim instead.

Shaw's testimony was consistent with both Edward's and Geter's testimonies. However, Shaw added that when Whar-ton retrieved the gun from the car, the gun was wrapped in a

shirt and that Wharton pulled it out from the shirt into the air when it discharged.

The trial court charged the jury on possession of a weapon during the commission of a violent crime, murder, and, over Wharton's objection, voluntary manslaughter. He denied Wharton's request for an involuntary manslaughter and accident charge. The jury found Wharton guilty of voluntary manslaughter and weapons possession. The court of appeals reversed and held that the trial court erred in charging voluntary manslaughter because there was no evidence of sufficient legal provocation on behalf of Victim and that transferred intent does not apply to voluntary manslaughter. The court went on to hold that even if transferred intent applied, there was no evidence of sufficient legal provocation on the part of Shaw.

This Court granted the State's petition for a writ of certiorari, and the State presents the following issues for review:

I.   Did the court of appeals err holding there was no evidence of sufficient legal provocation?

II.  Did the court of appeals err in holding the doctrine of transferred intent does not apply to voluntary manslaughter?

Wharton also filed a petition for a writ of certiorari. We granted Wharton's petition, and Wharton presents the following issues for review:

I.   Did the trial court err in refusing to charge the jury on involuntary manslaughter?

II.  Did the trial court err in refusing to charge the jury on accident?

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). A trial court's decision regarding jury charges will not be reversed where the charges, as a whole, properly charged the law to be applied. *State v. Rye,* 375 S.C. 119, 123, 651 S.E.2d 321, 323 (2007).

LAW/ANALYSIS

State's Issues

## I. Sufficient Legal Provocation

■ The State argues that the court of appeals erred in holding that there was no evidence of sufficient legal provocation warranting a voluntary manslaughter charge. We disagree.

■ Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Pittman,* 373 S.C. 527, 572, 647 S.E.2d 144, 167 (2007). The sudden heat of passion, upon sufficient legal provocation, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence. *Id.* To warrant the court in eliminating the offense of manslaughter it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter. *Id.* at 572, 647 S.E.2d at 168.

In our view, there is no evidence in the record of sufficient legal provocation. Testimony showed that Wharton was in a rage after his argument with Suber and that several people were trying to calm him. After attempts to calm him failed, Wharton deliberately instructed someone to bring him a gun, despite there being no threat of another person with a weapon. There was no evidence showing Victim provoked Wharton, and although there was evidence that Wharton and Shaw argued and exchanged words, there was no evidence Shaw posed a threat to Wharton either by possessing a weapon or through hostile acts. *See State v. Byrd,* 323 S.C. 319, 322, 474 S.E.2d 430, 432 (1996) (holding that where death is caused by the use of a deadly weapon, words alone, however opprobrious, are not sufficient to constitute a legal provocation, but words accompanied by hostile acts may, according to the circumstances, reduce a charge from murder to voluntary manslaughter).

While Wharton may have been in a rage and acting under a sudden heat of passion, there is no evidence of sufficient legal provocation. *See Pittman*, 373 S.C. at 573, 647 S.E.2d at 168 (recognizing that both heat of passion and sufficient legal provocation must be present at the time of the killing). Accordingly, we hold that the trial court erred in charging the jury on voluntary manslaughter.

## II. Transferred Intent

The State argues that the court of appeals erred in holding that the doctrine of transferred intent was inapplicable to voluntary manslaughter. We decline to address this issue.

In *State v. Childers*, 373 S.C. 367, 645 S.E.2d 233 (2007), the plurality of this Court held that the doctrine of transferred intent was not applicable to voluntary manslaughter cases because the overt act that produces the sudden heat of passion must come from the victim. However, the dissent would have held that if a defendant kills an unintentional victim upon sufficient legal provocation committed by a third party, the doctrine of transferred intent applies, entitling the defendant to a voluntary manslaughter charge.

In this case, the court of appeals held that the trial court erred in charging the jury on voluntary manslaughter because there was no evidence of sufficient legal provocation and because transferred intent does not apply to voluntary manslaughter. We find, however, that *Childers* was not a majority opinion, and the applicability of the doctrine of transferred intent to voluntary manslaughter cases where the defendant kills an unintended victim upon sufficient legal provocation committed by a third party remains an unsettled question in South Carolina. However, because we find no evidence of sufficient legal provocation by a third party in this case, we need not address this issue. We therefore vacate the portion of the court of appeals' opinion addressing this issue.

### Wharton's Issues

#### I. Involuntary Manslaughter

Petitioner argues the trial judge erred in refusing to charge the jury on involuntary manslaughter. We disagree.

216

Involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. *State v. Chatman*, 336 S.C. 149, 152, 519 S.E.2d 100, 101 (1999). If there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given. *State v. Reese*, 370 S.C. 31, 36, 633 S.E.2d 898, 900 (2006).

In our view, there is no evidence supporting an involuntary manslaughter charge. Even assuming Wharton did not intentionally fire the gun at Shaw, by pointing the gun and waiving it in the air, Wharton committed an unlawful act that would naturally tend to cause death or great bodily harm. Accordingly, we hold the trial court properly denied his request for an involuntary manslaughter charge.

## II. Accident

Wharton argues the trial court erred in refusing to charge the jury on the law of accident. We disagree.

For a homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, the defendant was acting lawfully, and due care was exercised in the handling of the weapon. *State v. Burriss*, 334 S.C. 256, 259, 513 S.E.2d 104, 106 (1999). Evidence of an accidental discharge of a gun will support a charge of accident where the defendant lawfully arms himself in self-defense. *Tisdale v. State*, 378 S.C. 122, 126, 662 S.E.2d 410, 412 (2008).

There is no evidence in the record to support an accident charge. Specifically, Wharton was not acting lawfully in waiving the gun in the air, nor did he exercise due care in handling the weapon. Furthermore, there is no evidence he was lawfully armed in self-defense. Accordingly, we hold that the trial court properly denied Wharton's request for a charge on the law of accident.

## CONCLUSION

For the foregoing reasons, we hold that the trial court properly denied Wharton's request to charge the jury on

involuntary manslaughter and accident, but that the trial court erred in charging the jury on voluntary manslaughter. Furthermore, we vacate the portion of the court of appeals opinion regarding the doctrine of transferred intent in regard to voluntary manslaughter. Accordingly, we affirm in part and vacate in part the court of appeals' decision.

WALLER, PLEICONES, JJ., and Acting Justices JAMES E. MOORE and DOROTHY MOBLEY JONES, concur.