THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT
 SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS
 PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 The State, Respondent,
 
 
 
 
 

v.

 
 
 
 
 Desmond Javon
 Sams, Appellant.
 
 
 
 
 

Appeal From Colleton County
Perry M. Buckner, Circuit Court Judge

Unpublished Opinion No. 2011-UP-205
 Submitted February 8, 2011  Filed May 4,
2011    

AFFIRMED

 
 
 
 Senior Appellate Defender Joseph L. Savitz, and Appellate
 Defender Tristan M. Shaffer, both of Columbia, for Appellant.
 Assistant Attorney General Mark R. Farthing,
 for Respondent.
 
 
 

PER CURIAM: Desmond Javon Sams appeals his conviction and
 sentence for voluntary manslaughter.  Sams contends the trial court committed
 reversible error by refusing to instruct the jury on involuntary manslaughter
 when the evidence arguably supported a factual finding that Sams
 unintentionally killed Jake Frazier (Victim) while acting in self-defense.  We
 affirm.[1]
The trial court charged
 murder, voluntary manslaughter, and self-defense, but declined to charge
 involuntary manslaughter.  The jury returned with a guilty verdict on the
 voluntary manslaughter charge.  Limited to the facts of this case, we hold the
 trial court did not err.  Sams's appellate brief does not articulate which
 definition of involuntary manslaughter he believes applies to the facts of his
 case.[2] 
 Therefore, we will proceed to analyze the facts of this case under both
 definitions.  
"Involuntary
 manslaughter is (1) the unintentional killing of another without malice, but
 while engaged in an unlawful activity not naturally tending to cause death or
 great bodily harm; or (2) the unintentional killing of another without malice,
 while engaged in a lawful activity with reckless disregard for the safety of
 others."  State v. Wharton, 381 S.C. 209, 216, 672 S.E.2d 786,
 789 (2009).  "If
 there is any evidence warranting a charge on involuntary manslaughter, then the
 charge must be given."  Id.
Sams did not qualify for an
 involuntary manslaughter instruction under the first definition because his
 conduct in placing his arms around Victim's neck and holding Victim down for
 over eight minutes was of the type naturally tending to cause death or great
 bodily harm.  See Wharton, 381 S.C. at 216, 672 S.E.2d at 789
 (defining involuntary manslaughter as "the
 unintentional killing of another without malice, but while engaged in an
 unlawful activity not naturally tending to cause death or great bodily harm").  
This case can be factually
 distinguished from State v. Chatman, 336
 S.C. 149, 519 S.E.2d 100 (1999).  Chatman accidentally strangled the victim by
 pressing his shoulder into the victim's neck while engaged in a fight with the victim
 on the ground.  Id. at 153, 519 S.E.2d at 101-02.  The supreme court
 noted Chatman's conduct was not such that naturally tended to cause death or
 great bodily harm because it was not a traditional strangulation-type situation
 involving the accused's hands placed around a victim's neck.  Id. at
 153, 519 S.E.2d at 102.  Thus, Chatman was entitled to an involuntary
 manslaughter charge under the first definition.  Id.  
In contrast to Chatman,
 the present case is a traditional strangulation-type situation.  Sams wrapped
 both arms around Victim's neck and applied pressure for over eight minutes.  Sams
 continued to hold Victim face down in a choke hold even after Victim became
 "lifeless."  When the police arrived and asked Sams to release his
 hold on Victim, Sams was reluctant to do so.  Furthermore, Sams did not
 expressly argue below, nor does he suggest on appeal, that his actions were not
 of the type naturally tending to cause death or great bodily harm.  Even if Sams
 had raised this argument, this contention is manifestly without merit.  See Rule 220(b)(2) ("The Court of Appeals need not address a point which is
 manifestly without merit.").  
Sams was likewise not entitled
 to an involuntary manslaughter charge under the second definition.  See Wharton, 381 S.C. at 216, 672 S.E.2d at 789 (further defining
 involuntary manslaughter as "the
 unintentional killing of another without malice, while engaged in a lawful
 activity with reckless disregard for the safety of others").  Sams could only
 qualify for an involuntary manslaughter instruction under the second definition
 if he were acting lawfully in self-defense and unintentionally killed Victim.[3]  
Sams stated, "I wasn't
 choking him like hard to try to kill him" and "I wasn't trying to
 kill him."  Even assuming Sams was acting lawfully in defending himself,
 he admitted to intentionally choking Victim.  In addition, Sams exerted more
 force than was reasonably necessary to defend himself by wrapping his arms
 around Victim's neck for over eight minutes while Victim lay face down on the
 floor and begged for his life.  See State v. Campbell, 111 S.C. 112, 113, 96 S.E. 543, 543-44 (1918)
 ("A person assaulted, being without fault in bringing
 on the difficulty, has the right to use such force as is necessary for his
 complete self-protection, or which in the mind of a person of ordinary reason
 and firmness would reasonably prevent the assailant from taking his life or inflicting
 serious bodily harm.").
State v. Pickens, in which the defendant argued he shot a
 gun at his victim in self-defense, is analogous to the present case.  320 S.C.
 528, 531-32, 466 S.E.2d 364, 366-67 (1996).  In Pickens, refusal to
 charge involuntary manslaughter was proper because the defendant admitted he intentionally
 shot the gun at the victim.  Id.  Like Pickens, Sams was either
 not guilty by reason of self-defense, or guilty of voluntary manslaughter.  Id. 
 However, no evidence exists indicating Sams's actions were unintentional for
 purposes of an involuntary manslaughter charge.
This case is distinguishable
 from accidental trigger-pull gun cases where an involuntary manslaughter
 instruction is often deemed appropriate.  See, e.g., State v. Mekler, 379 S.C. 12, 15-16, 664 S.E.2d 477, 479
 (2008) (explaining an involuntary manslaughter instruction was warranted when
 testimony supported defendant's assertion that she unintentionally shot victim
 while acting in reckless disregard for the safety of others by negligently handling
 a loaded shotgun); State v. Light, 378 S.C. 641, 648-49, 664 S.E.2d 465,
 468-69 (2008) (holding an involuntary manslaughter instruction was warranted
 when defendant testified he was struggling with his girlfriend to take
 possession of a loaded shotgun when the gun unintentionally discharged); State
 v. Crosby, 355 S.C. 47, 53, 584 S.E.2d 110, 112-13 (2003) (finding
 defendant's contradictory statements that he pulled the trigger and did not
 intend to pull the trigger were sufficient to warrant a jury instruction on
 involuntary manslaughter). 
Here, Sams admitted he
 intentionally choked Victim but suggested he did not choke him hard enough to
 kill him.  The intentional act of choking someone is evidence of malice, not
 reckless disregard for the safety of others, and a malicious killing is not an
 unintentional killing.  See Wharton, 381
 S.C. at 216, 672 S.E.2d at 789 (defining involuntary manslaughter as "the unintentional killing of another without
 malice, while engaged in a lawful activity with reckless disregard for the
 safety of others") (emphasis added); see also Tate v. State,
 351 S.C. 418, 426, 570 S.E.2d 522, 527 (2002) ("Malice is the
 wrongful intent to injure another and indicates a wicked or depraved spirit
 intent on doing wrong.").  Indeed, two eye-witnesses to the incident
 testified Sams told Victim "I'm going to . . . kill you" while
 engaged in the act of choking Victim.  
Because no evidence exists
 demonstrating that this was an unintentional killing under either definition of
 involuntary manslaughter, the decision of the trial court not to charge
 involuntary manslaughter is
AFFIRMED.  
WILLIAMS, GEATHERS, and
 LOCKEMY, JJ., concur.       

[1]  We affirm without oral argument pursuant to Rule
 215, SCACR.
[2]  We are disturbed by the brevity of the legal
 argument in Sams's appellate brief, which consists of less than a page.
[3]  The trial court agreed to charge the jury on the law
 of self-defense, and the State did not object to this charge.